UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LANIER THOMPSON,

        Plaintiff,                                   Hon. Janet T. Neff

v.                                                    Case No. 1:12-CV-1327

UNKNOWN SISSON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #28). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

Plaintiff Lanier Thomson is presently incarcerated at the Marquette Branch Prison. The alleged events giving rise to this action occurred at the Ionia Maximum Correctional Facility (ICF). Plaintiff sues the following ICF officials: Deputy Warden Erica Huss and Correctional Officers (unknown) Sisson, (unknown) Richardson, P. Jones, and (unknown) Fair. The following allegations are contained in Plaintiff's amended complaint. (Dkt. #13).

On October 2, 2012, Defendant Jones came to Plaintiff's cell and threatened to beat him for standing at his door. Plaintiff wrote to Defendant Huss, complaining about the threat. Huss told Plaintiff that she did not believe him and refused to intervene. Sometime thereafter, Defendant Fair

delivered a meal to Plaintiff. Fair smiled and told Plaintiff to enjoy his food, explaining that he had spit and rubbed his penis on the food. Plaintiff observed yellowish spit on his food which smelled like body odors. Plaintiff filed a grievance against Fair.

On November 2, 2012, Defendant Sisson conducted rounds for prisoner showers. When Sisson skipped Plaintiff's cell, Plaintiff called out that he was ready for his shower. Sisson told Plaintiff that he was not going to be taken to the shower. Sisson also ordered Plaintiff to "shut up before I beat your ass." Plaintiff asked why Sisson was being derogatory and again asked to be taken to the shower. Sisson replied, "[al]right you[r'e] getting [your] ass beat." A few minutes later, Officers Mott and Jarmillo handcuffed Plaintiff and escorted him to the B Wing Unit 2 shower. When Plaintiff arrived, Defendants Sisson and Richardson were already inside the shower. Sisson walked up to Plaintiff, grabbed his neck and began choking him. Sisson then punched Plaintiff in the face, slammed him to the shower floor, punched him, pulled his hair, and pushed his face into the floor.

Sisson told Plaintiff that the assault was for writing grievances against Fair and Jones. Sisson told Plaintiff that he would be killed if he continued to write grievances. Sisson told Plaintiff that Officers Jones, Fair, Richardson, Rucker and Woods were his "family" and that he would personally kill Plaintiff before he would allow Plaintiff to get one of his "brothers" fired. Sisson also threatened to send Plaintiff to Unit One, where other officers would beat him, take his food trays, and charge him with misconduct violations.

On November 5, 2012, Plaintiff was examined by Nurse Marolas. Plaintiff told Marolas that the cuts on his face, neck and forehead had been caused by Sisson beating him. Richardson overheard Plaintiff comment that he had been assaulted and demanded to know what assault Plaintiff was complaining about. Plaintiff refused to answer because Richardson had been present during the

assault by Sisson. Plaintiff told Marolas that he feared staff would harm him. Nurse Marolas told Plaintiff, "I'm sorry Thompson the[re] [is] nothing I can do." When the nurse left, Richardson grabbed Plaintiff out of his chair and pushed him back to his cell, while twisting on his handcuffs and causing his wrists to bleed. Richardson stated, "didn't Sisson tell you not to tell about what he did to you[?] [N]ow you[r'e] going to get it again from me." Richardson told Plaintiff to stay in his cell or risk being "fucked up." Because of his fear of the officers, Plaintiff subsequently told his psychologist that he had caused his own injuries by self-mutilation and attempted suicide.

Plaintiff's claims against Defendants Huss and Jones have since been dismissed. Defendants Sisson, Richardson, and Fair now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that

"the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538,

551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion for summary judgment, Defendants have submitted a Step III Grievance Report which indicates that from May 2009 through March 25, 2013, Plaintiff pursued eleven grievances through all three steps of the grievance process. (Dkt. #29, Exhibit B). Ten of these grievances were initiated at Step I prior to the events giving rise to this action and, thus, do not concern the claims presently at issue. The remaining grievance, ICF-12-12-4011-28e, was not filed at Step I until after Plaintiff initiated the present action and, therefore, cannot serve to properly exhaust any of the claims asserted in the present action. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed").

In response to the present motion, however, Plaintiff has submitted an affidavit in which he asserts the following. (Dkt. #33). On November 2, 2013, Plaintiff was on modified grievance access which meant that he could not file a grievance unless he first requested a grievance form from the grievance coordinator. On November 2, 2013, following the alleged assault by Defendant Sisson, Plaintiff submitted a kite to the grievance coordinator requesting a grievance. Seven days later, Plaintiff was provided a grievance. Plaintiff completed the grievance, but the grievance coordinator refused to process his grievance. *Id.* Plaintiff included with his affidavit a copy of the grievance he submitted. (Dkt. #33 at 6 of 12). In his grievance, Plaintiff alleges that on November 2, 2012, he was assaulted in the shower by Defendant Sisson who told Plaintiff that he was beating him in retaliation for filing grievances against other staff members. *Id.*

Defendants have responded to this evidence by submitting an affidavit executed by grievance coordinator Myken Breedlove. (Dkt. #39, Exhibit A). Breedlove asserts that "there is no indication. . .[in]. . .the grievance files and logs" that Plaintiff "ever filed [the] grievance" in question. Breedlove further asserts that from November 2, 2012, through November 9, 2012, Plaintiff "did not request a grievance for any assault issue." *Id.* This evidence only underscores, however, the existence of a genuine issue of material fact on the question whether Plaintiff requested a grievance form and submitted the grievance in question. If the grievance Plaintiff allegedly submitted was not accepted for processing, a record of such would not appear in the grievance files and logs.

In sum, with respect to Plaintiff's allegations against Defendant Sisson regarding the alleged events of November 2, 2012, Defendant has failed to establish that Plaintiff has not properly

In response to the present motion, however, Plaintiff has submitted an affidavit in which he asserts the following. (Dkt. #33). On November 2, 2013, Plaintiff was on modified grievance access which meant that he could not file a grievance unless he first requested a grievance form from the grievance coordinator. On November 2, 2013, following the alleged assault by Defendant Sisson, Plaintiff submitted a kite to the grievance coordinator requesting a grievance. Seven days later, Plaintiff was provided a grievance. Plaintiff completed the grievance, but the grievance coordinator refused to process his grievance. *Id.* Plaintiff included with his affidavit a copy of the grievance he submitted. (Dkt. #33 at 6 of 12). In his grievance, Plaintiff alleges that on November 2, 2012, he was assaulted in the shower by Defendant Sisson who told Plaintiff that he was beating him in retaliation for filing grievances against other staff members. *Id.*

Defendants have responded to this evidence by submitting an affidavit executed by grievance coordinator Myken Breedlove. (Dkt. #39, Exhibit A). Breedlove asserts that "there is no indication. . .[in]. . .the grievance files and logs" that Plaintiff "ever filed [the] grievance" in question. Breedlove further asserts that from November 2, 2012, through November 9, 2012, Plaintiff "did not request a grievance for any assault issue." *Id.* This evidence only underscores, however, the existence of a genuine issue of material fact on the question whether Plaintiff requested a grievance form and submitted the grievance in question. If the grievance Plaintiff allegedly submitted was not accepted for processing, a record of such would not appear in the grievance files and logs.

In sum, with respect to Plaintiff's allegations against Defendant Sisson regarding the alleged events of November 2, 2012, Defendant has failed to establish that Plaintiff has not properly

exhausted his administrative remedies.[1] Defendants Richardson and Fair, however, have carried their burden of demonstrating that Plaintiff failed to properly exhaust the claims asserted against them. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Richardson and Fair be dismissed for failure to exhaust administrative remedies, but that Plaintiff's claims against Defendant Sisson regarding the alleged events of November 2, 2012, go forward.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #28), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendants Richardson and Fair be dismissed for failure to exhaust administrative remedies, but that Plaintiff's claims against Defendant Sisson regarding the alleged events of November 2, 2012, go forward.

---

[1] While not asserted in the present motion, the Court anticipates that Defendant Sisson may subsequently argue that even if Plaintiff did file a Step I grievance as he alleges, dismissal of his claims is nevertheless appropriate because Plaintiff failed to file a Step II or Step III grievance. The Court is not persuaded. Plaintiff simply cannot file a Step II or Step III grievance if prison officials fail to acknowledge that he first filed a Step I grievance. This is not a circumstance in which Plaintiff's Step I grievance was accepted for filing, but a response never provided. Relevant MDOC policy provides that in such a circumstance the prisoner can (and must) file a Step II and/or Step III grievance notwithstanding the failure by prison officials to timely respond to the grievance in question. *See* Michigan Department of Corrections Policy Directive 03.02.130 (eff. July 9, 2007). Such is inapplicable, however, where the grievance in question was never processed or accepted for filing as Plaintiff alleges.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 10, 2013

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge